*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CYNTHIA A. SIECIENSKI-ANTINORO, | : | |
| Plaintiff, | : | Civil Action No. 19-19756 |
| v. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | **OPINION** |
| Defendant. | : | |

**WOLFSON, Chief Judge:**

Cynthia A. Siencienski-Antinoro ("Plaintiff") appeals from the final decision of the Commissioner of Social Security ("Defendant"), denying Plaintiff disability benefits under Title II of the Social Security Act. After reviewing the Administrative Record, the Court finds that the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and, accordingly, is affirmed.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on July 7, 1966 and was 48 years old on the alleged onset date of June 30, 2015. (Administrative Record ("A.R.") 20, 278.)  Plaintiff graduated from high school and, prior to her disability, worked as a front desk receptionist and an administrative assistant. (A.R. 29, 39.) Plaintiff filed an application for Social Security benefits on October 14, 2015, alleging an onset date of June 20, 2015. (Plaintiff's Brief ("Pl. Br."), at 1.) When that claim was denied on February 26, 2016, Plaintiff filed for reconsideration on April 12, 2016. (Pl. Br., at 1.)  Her claim was denied upon reconsideration on May 16, 2016. (Pl. Br., at 1.)  Thereafter, Plaintiff filed a

request for a hearing, which occurred on June 14, 2018, before Administrative Law Judge Leonard Olarsch ("ALJ"). (Pl. Br., at 1.)  The ALJ's decision, rendered on August 13, 2018, found that Plaintiff was capable of performing past relevant work as an administrative assistant and front desk receptionist, and, therefore, was not disabled, as defined under the Social Security Act.  (Pl. Br., at 1.)  Plaintiff filed a Request for Review of the Hearing Decision with the Appeal Council on October 15, 2018, which was denied on August 20, 2019.  (Pl. Br., at 1.)  Afterwards, Plaintiff filed the instant appeal. (Pl. Br., at 1.)

### A.  Review of Medical Evidence

#### i.  *Medical Evidence of Physical Impairments*

On February 8, 2016, Dr. Pradip Gupta ("Dr. Gupta"), who was not Plaintiff's treating physician, performed a consultative examination on Plaintiff and diagnosed her with chronic pain, rheumatoid arthritis, fibromyalgia, and lower back pain. (A.R. 450.)  In 2012, Plaintiff underwent back surgery due to a cracked disc at L4/S1, in which she had a cadaver disc inserted, along with rods and screws. (A.R. 55-56.) In December 2013, Plaintiff underwent another surgery, a lumbar discectomy, in response to pain and numbness that was the result of a herniated disc. (A.R. 278.)

Plaintiff testified that she had been diagnosed with rheumatoid arthritis "ten plus years ago." (A.R. 41.) In 2016, she was found to have rheumatoid arthritis in multiple sites. (A.R. 737.) Plaintiff reported taking prednisone and methotrexate to ease the pain of her arthritis and being unable to lower her medications, as she would then experience "intolerable" pain. (A.R., at 42.) Plaintiff's medical records maintained at the Rheumatology Center of Princeton, from various appointments in 2017 and 2016, detail Plaintiff's history of joint pain in her feet, elbows, hands and knees, weakness in her hands, and joint swelling. (A.R., at 694, 698, 702, 706, 710, 714, 718, 722, 726, 730, 734.)  These medical records show, however, that Plaintiff retained full normal

range of motion of her shoulders, elbows, wrists, hips, knees, and ankles, as well as normal feet and hands. (A.R. 700, 704, 708, 712, 716, 720, 724, 728, 732, 736-37.)

Plaintiff also reported fibromyalgia as another source of her chronic pain. (A.R. 42.) For the pain caused by both the arthritis and fibromyalgia, Plaintiff reported being prescribed a fentanyl patch, Vicodin tablets, and monthly epidural and steroid shots from a pain management doctor. (A.R. 43, 446.)  Records from Princeton Pain Management from 2012 through 2018 indicate that Plaintiff complained of pain in her lower back radiating to her legs (A.R. 340, 425, 429, 432, 435, 438, 502) At various points in time, Plaintiff complains of experiencing fatigue as a side effect of her medication. (A.R. 425, 429, 438.) Plaintiff's medical records also indicate that the pain improved with treatment, such as rest and medication. (A.R. 404, 407, 437, 502.)  Other than these complaints, the records indicate Plaintiff was "alert and oriented" at her appointments, interacted normally, and was not in acute distress. (A.R. 340-41, 342-43, 345, 349, 352, 502).

### ii.      *Medical Evidence of Mental Impairments*

On February 8, 2016, Dr. Gupta diagnosed Plaintiff with an adjustment disorder with mild to moderate mixed depression and anxiety, and panic attacks with agoraphobia. (A.R. 450.) On August 25, 2016, Dr. Sean Naini ("Dr. Naini"), Plaintiff's treating physician, reported that Plaintiff suffered from depression. (A.R. 477.)  Plaintiff reported taking Cymbalta for her depression (A.R. 445.)  From October 2013 until November 2015, Plaintiff went to Interchange Behavioral Health every other week, as she recounted struggles with low moods, coping with her medical conditions, low motivation, hopelessness, strain in interactions with family members, anxiety, and irritability. (A.R. 441.) In a Mental Status Report completed in December 22, 2015, Lindsay Hutchinson, LCSW, ("Ms. Hutchinson") who treated Plaintiff, reported that Plaintiff was feeling overwhelmed by stressors, low in her moods, struggling to cope, and felt strained in her interactions with others.

(A.R. 443.)  The Report further stated that Plaintiff had difficulty maintaining her routine due to increased depressed mood and she struggled to set and achieve goals for herself. (A.R. 444.) Dr. Gupta's report from February 8, 2016 notes that Plaintiff had a history of insomnia, difficulty in attention, concentration, and focus, and difficultly resting and sleeping because of continued pain. (A.R. 447.) It also mentions that Plaintiff experienced panic attacks on a weekly basis, that could last for 10 to 15 minutes or up to 1 hour. (A.R. 447.) At the time, Plaintiff reported seeing Ms. Hutchinson about twice a month and enrolled in a Princeton House outpatient psychiatric clinic program. (A.R. 447.)  Dr. Gupta also reported that Plaintiff was alert, oriented to time, place, and person, and her mood was "elated." (A.R. 449.)   He found her memory intact and stated that her ability to follow multi-step commands and to retain and recall information was good. (A.R. 449.)

Plaintiff's treatment notes from 2018 appointments with Dr. Ronnen Abramov, D.O., ("Dr. Abramov"), Plaintiff's treating physician at Princeton Pain Management, state Plaintiff was alert, was able to perform daily activities, and responded normally to a depression screening. (A.R. 502, 506, 510.)  Dr. Abramov recorded three negative depression screenings dated, February 2018, March 2018, and April 2018.  (A.R. 510, 506, 502.) Further appointments with Dr. Naini in 2016 and 2017 reveal that Plaintiff was normal and had an appropriate affect and demeanor. (A.R. 471, 475, 493.) In a September 2017 visit and a June 2016 visit, Dr. Naini noted negative depression screenings. (A.R. 472, 490.)

**B.    Review of Testimonial Evidence**

*i.    Plaintiff's Testimony*

At the hearing before the ALJ on June 14, 2018, Plaintiff testified that she was 5'1", 202 pounds, and her highest level of education was high school. (A.R. 38-39.) She described the symptoms she experienced due to her rheumatoid arthritis, including hand and feet swelling,

overall pain, and weight-gain due to medication. (A.R. 42.) Plaintiff explained that when her hands get cold, they turned blue, which happened about once a week. (A.R. 50.) Plaintiff testified that she required breaks to stretch her hands to try to alleviate the pain. (A.R. 50.) She also reported having difficulty with small buttons or clasps due to her arthritis. (A.R. 51.)  Plaintiff stated that regularly using a keyboard resulted in stiffness and that she required breaks every 15 to 30 minutes to run hot water on her hands or take painkillers to relieve the pain. (A.R. 51-52.)

Plaintiff also described the symptoms she experienced after back surgery in 2012, which included lower back pain that radiated down into her legs and the inability to walk more than a block or a block-and-a-half.  (A.R. 43-44.) She reports that her surgery in 2012 meant she was "out of work for an extended period of time." (A.R. 43.)  Plaintiff also stated she is only comfortable sitting for 10 to 15 minutes, unless she was in a recliner with her legs higher than her body and the pressure removed from her back. (A.R. 44.)  If she stood for more than a minute or two, Plaintiff explained, her back pain would become "unbearable." (A.R. 44-45.) She reported only being able to lift about two to three pounds. (A.R. 45.) She testified that her second back surgery in 2013 was not as successful as she had hoped, and she still experienced pain on a daily basis. (A.R. 56.)

Plaintiff testified that she has difficultly performing daily tasks and activities, such as using the stairs in her home. (A.R. 47.) She also stated that fatigue had previously caused her to fall asleep at work and she required at least one nap during the day. (A.R. 53.) She reported that on a "good day" she was able to go to the store, stand in line, but then needed to lay in bed due to pain. (A.R. 56.) She stated on a bad day, which occurs at least two to three days a month, she cannot get out of bed due to pain. (A.R. 56-57.)

Plaintiff stated that she was financially unable to continue seeking mental health treatment at the time of the hearing but, previously, she was in an intensive outpatient program at Princeton House for three months and continued seeing a therapist for about two years.  (A.R. 57.)

### ii.    Vocational Expert's Testimony

Tanya Edghill ("Edghill"), a vocational expert, also testified at the hearing on June 14, 2018. (A.R. 59.) Edghill classified Plaintiff's previous relevant work as an administrative assistant and front desk receptionist, both sedentary jobs, using the Directory of Occupational Titles. (A.R. 58.)  She stated that an individual of Plaintiff's education, training, and work experience, who was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, could stand and walk in the aggregate of four hours in an eight-hour workday, was limited to occasional postural maneuvers and frequent fingering would be able to perform Plaintiff's past relevant work. (A.R. 60-61.)  Edghill also asserted that such an individual would also be able to perform Plaintiff's past relevant work if the individual could follow multi-step demands. (A.R. 61.)   In response to questioning from Plaintiff's attorney, Edghill stated that an individual who needed to take a break every thirty minutes throughout the day would not be able to sustain his/her job. (A.R. 61-62.)  She also stated that an employee needing two naps during the day or two or three unscheduled absences a month would not be compatible either. (A.R. 62-63.)

### iii.    Plaintiff's Father's Testimony

Plaintiff's father, Edward Siencienski, submitted a witness statement dated June 11, 2018. (A.R. 271.)  In this statement, Plaintiff's father echoed Plaintiff's testimony that her physical capacity had been seriously reduced, that she had undergone two back surgeries, and she could not sit or stand for a prolonged period. (A.R. 272.)  He also stated that he provided financial support for his daughter when possible. (A.R. 273.)

### C.     Medical Opinions

A general medical report from Dr. Andrew Casden ("Dr. Casden"), Plaintiff's treating physician, dated November 18, 2015, noted that, in his medical opinion, Plaintiff is limited to lifting and carrying a maximum of 15 pounds. (A.R. 332.) The report further found that Plaintiff was limited in standing, walking and sitting. (A.R. 332.) A general medical report from Dr. Naini, dated November 18, 2015, stated that Plaintiff was limited to lifting and carrying a maximum of 5 pounds. (A.R. 338.)  Dr. Naini wrote that Plaintiff was limited to sitting for less than 6 hours per day and limited in standing and walking for less than two hours per day. (A.R. 338.) Ms. Hutchinson noted in a psychiatric report, dated December 22, 2015, that Plaintiff had no limitations in understanding and memory. (A.R. 444.) Ms. Hutchinson wrote that Plaintiff had limited sustained concentration and persistence, because she had difficulty maintaining her routine due to an increased depressed mood. (A.R. 444.)  Ms. Hutchinson also stated that Plaintiff was limited in socially interacting because she was easily triggered by others. (A.R. 444.)   And finally, Ms. Hutchinson reported that Plaintiff was limited in adapting because she struggled to set and achieve goals. (A.R. 444.)

The ALJ's written decision cites four additional medical professionals who reviewed the material for Disability Determination Services ("DDS") and offered medical opinions on Plaintiff's limitations. (A.R. 28.) A DDS medical consultant, Fran Friedman, Ph.D., in February 2016, found that Plaintiff had no more than moderate limitations maintaining social functioning, performing activates of daily living, and maintaining concentration, persistence or pace. (A.R. 28, 76-77.)  Ibrahim Housriu, M.D., found that Plaintiff could occasionally carry or lift 20 pounds and frequently lift or carry 10 pounds. (A.R. 74.) He also stated that Plaintiff could stand or walk for a total of 4 hours and sit for a total of 6 hours in an 8-hour workday. (A.R. 74.) The ALJ notes that

these findings were reviewed and affirmed by Luis Umpierre, Psy.D. and Morris Feman, M.D. (A.R. 28.)

### D.    The ALJ's Findings

Following the hearing, the ALJ issued a written decision on August 13, 2018, which determined that Plaintiff had not satisfied her burden of establishing disability. First, the ALJ found that Plaintiff met the insured status requirement of the Social Security Act through March 31, 2021. (A.R., at 22.) Next, the ALJ found that Plaintiff had not engaged in substantial gainful employment since June 30, 2015, the alleged onset date.  (A.R., at 22.)  Plaintiff's reported income for 2015 and 2016 was from accrued sick and vacation time, as well as unemployment and temporary disability, which the ALJ found did not qualify as substantial gainful activity. (A.R., at 23.) The ALJ also determined that Plaintiff had four severe impairments: major depressive disorder, degenerative disc disease of the lumbar spine, rheumatoid arthritis, and status-post lumbar fusion. (A.R., at 23.) Along with those impairments, Plaintiff was found to have two nonsevere impairments: obesity and reactive airway disease. (A.R., at 23.) These two impairments were found to be nonsevere because the ALJ found little evidence that Plaintiff experienced any complications or emergency medical care due to these ailments and her physical evaluations were generally normal. (A.R., at 23.)  The ALJ also indicated that these nonsevere conditions were properly controlled by recommended medical management and medication compliance. (A.R., at 23.)

Then, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R., at 23.) The ALJ found that Plaintiff's physical impairment did not meet or equal the medical listing under 1.04, disorders of the spine, because the record did not

meet the criteria and Plaintiff had benefitted from treatment. (A.R., at 23-24.) Further, the ALJ found that the severity of Plaintiff's mental impairments did not meet or equal the criteria listed under 12.04 and 12.06, as the criteria require that the mental impairments result in at least one extreme or two marked limitations in either understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing herself. (A.R., at 24.)  The ALJ found Plaintiff had no more than a mild limitation in understanding, remembering, or applying information. (A.R., at 24.)  While Plaintiff alleged memory loss, her medical record contained little evidence of a loss of memory or judgment. (A.R., at 24.) Plaintiff was also found to have a mild limitation in interacting with others. (A.R., at 24.) Again, the ALJ found Plaintiff's subjective allegations of social isolation to be contradicted by her doctors' evaluations, who reported Plaintiff was cooperative and had no issues interacting with medical staff. (A.R., at 24.) The ALJ did find that Plaintiff had a moderate limitation with regard to concentrating, persisting or maintaining pace. (A.R., at 24.)  Plaintiff's testimony that she could only focus for a short period of time, coupled with her diagnosis of major depressive disorder, which was characterized as moderate, led the ALJ to conclude that Plaintiff had no more than a moderate limitation in this function. (A.R., at 24.)  And for the final category, of adapting or managing oneself, the ALJ found Plaintiff's allegation that she had difficulty performing activities of daily living was contradicted by the record, which lacked evidence that she was "significantly limited in her ability to take awareness of hazards or require[d] excessive supervision while performing basic day-to-day tasks." (A.R., at 24.)

The ALJ also found that Plaintiff did not meet the criteria of 12.04 and 12.06 because the record failed to demonstrate a medically documented history of the existence of a "serious and persistent" mental health disorder over a period of at least 2 years, along with evidence of medical

treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing, and that diminishes the symptoms and signs of a mental disorder. (A.R., at 25.) Nor did the ALJ find evidence of a marginal adjustment, that is, the minimal capacity to adapt to changes in the environment or to demands that are not already part of Plaintiff's daily life. (A.R., at 25.)

Due to the finding that Plaintiff's impairments did not meet or medically equal the criteria, the ALJ made a determination on Plaintiff's residual functional capacity ("RFC"). (A.R., at 25.) The ALJ found that Plaintiff has the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except she could frequently lift and carry 10 pounds and occasionally lift and carry 20 pounds. (A.R., at 25.) The ALJ also found that Plaintiff was limited to occasional postural limitations and frequent fingering and that Plaintiff could stand and walk four hours and sit six hours in an eight-hour workday. (A.R., at 25.) The ALJ also found that Plaintiff could follow multi-step commands. (A.R., at 25.)

Based on the RFC finding, the ALJ concluded that Plaintiff was capable of performing her past relevant work as an administrative assistant and front desk receptionist, as this work does not require performance of work-related activities precluded by Plaintiff's RFC. (A.R., at 29.) Specifically, the ALJ found, in relying on the testimony of a vocational expert and comparing the requirements of an administrative assistant and front desk receptionist, that Plaintiff was able to perform these jobs "as actually performed and as generally performed in the national economy." (A.R., at 30.)

In sum, the ALJ concluded that Plaintiff was not disabled from June 30, 2015 through the date of the decision, August 13, 2018, and therefore denied Plaintiff's application for disability benefits. (A.R., at 30.)

## II.    **STANDARD OF REVIEW**

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* at § 404.1520(a); see *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Yuckert*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Yuckert*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §

404.1520(d). If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(b). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id*. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four that he or she has not retained the RFC to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Yuckert*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(f); *Yuckert*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Yuckert*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(a). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and is not disabled. *See id.* at § 404.1523; *Plummer*, 186 F.3d at 428.

III.   **ANALYSIS**

Plaintiff raises five issues on appeal. First, Plaintiff argues that the ALJ failed to consider Plaintiff's mental impairment in the RFC determination. Second, Plaintiff argues that the ALJ erred by failing to account for Plaintiff's limitations with her hands in the RFC determination and the evaluation of Plaintiff's ability to perform her past relevant work. Third, Plaintiff contends that the ALJ erred in dismissing the treating source opinions of Ms. Hutchinson, Dr. Casden, and Dr. Naini.  Fourth, Plaintiff claims that the ALJ erred in rejecting the witness statement of Plaintiff's father. And lastly, Plaintiff argues that, under the Medical Vocation Guidelines, Plaintiff is not capable of sustained work.  For the reasons that follow, none of these arguments justify vacating the ALJ's decision.

### A.     Consideration of Plaintiff's Mental Impairment in the RFC

Plaintiff contends that the ALJ failed to properly consider in his RFC findings Plaintiff's mental impairment, in particular her major depressive disorder. (Plaintiff's Brief ("Pl. Br."), at 13.) Plaintiff further claims that the ALJ failed to consider Plaintiff's fatigue caused by her medication and any limitations consistent with her fatigue in his RFC determination. (Pl. Br., at 13.) In response, Defendant argues that the ALJ reasonably considered and discussed the evidence relating to Plaintiff's mental impairments in the RFC analysis. (Defendant's Opposition Brief ("Def. Opp. Br."), at 12.)

The ALJ determined that Plaintiff was not conclusively disabled under the criteria set forth in the Impairment List, and, therefore, needed to determine whether Plaintiff had retained the RFC to perform her past relevant work.  "'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Hartranft v. Apfel*, 181 F.3d 358, 359 n. 1 (3d Cir. 1999)(citing 20 C.F.R. § 404.1545(a)).  When making this

determination, the ALJ considers how the nature and extent of Plaintiff's mental and physical impairments and other restrictions impact Plaintiff's ability to do past work. 20 C.F.R. § 404.1545(b)-(d).   The ALJ must consider the limiting effects of all Plaintiff's impairments, including those that are not severe. 20 C.F.R. § 404.1545(e).

Here, the ALJ appropriately considered Plaintiff's mental impairment in his RFC finding. In a multi-paged decision, the ALJ noted that Plaintiff "described mental health symptoms related to her depression, which have caused difficulty concentrating and paying attention." (A.R. 26.) The ALJ explained that Plaintiff "reported that she had difficulty remembering to pay the bills, understanding, and getting along with others." (A.R. 26.) But, the ALJ found that contradictory evidence existed in Plaintiff's medical record, as Plaintiff "stated that she has no difficulty completing personal care such as dressing, bathing, and using the bathroom…[and] does not need special reminders and can manage her finances." (A.R. 26.)

The ALJ may weigh the credibility of Plaintiff's testimony but "he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000); *see also Plummer*, 186 F.3d at 429; *Cotter v. Harris*, 642 F.3d 700, 705 (3d Cir. 1981).   The inconsistency between Plaintiff's allegations and the medical record was specifically cited in the ALJ's reasoning.   The ALJ recognized the symptoms Plaintiff reported during Dr. Gupta's evaluation in February 2016, such as difficulty sleeping, panic attacks, and anxious and abnormal mood. (A.R. 28.) But, Dr. Gupta reported that Plaintiff was appropriately groomed, had intelligible speech, unimpaired memory, good attention and concentration, intact calculation skills, and displayed little evidence of suicidal intentions, hallucinations, or difficulty controlling her impulse. (A.R. 28.)   These observations by Dr. Gupta were repeated in medical reports from Dr. Naini and Dr Abramov.   In

June 2016 and September 2017, Dr. Naini reported that Plaintiff was psychiatrically unremarkable, had an appropriate affect, demeanor, speech and memory. (A.R. 28.) From January 2016 to December 2017, Dr. Abramov reported that Plaintiff was pleasant, alert, oriented, interacted appropriately, and even reported her mood as "good." (A.R. 28.) The ALJ also cited the medical opinion of Fran Friedman, Ph.D., affording it great weight in his consideration of the RFC. The ALJ ultimately found that this collective medical evidence "supports [Plaintiff's] residual functioning capacity that she is limited to multi-step commands. Particularly, mental status examinations showed that [Plaintiff] was generally mentally stable with good attention and concentration skills." (A.R. 28.) It is the ALJ's discretion to give greater weight to the medical record than Plaintiff's testimony, as "[g]reat weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence." *Castellano v. Berryhill*, No. 17-1035, 2018 U.S. Dist. LEXIS 158064, at *23-24 (M.D. Pa. Aug. 24, 2018). By citing the evidence in the medical records that contradicted Plaintiff's testimony, the ALJ provided a sufficient basis for his decision in this context.

The ALJ also considered his own observations of Plaintiff at the hearing as another factor in assessing Plaintiff's mental impairment. (A.R. 26.) He found "she related well to the . . . questionings at the hearing and she answered the questions quickly and appropriately without any evidence of a memory or concentration problem." (A.R. 26.) The ALJ may consider his own observations of the Plaintiff in making a credibility determination, so long as the ALJ's observations are but one factor in the analysis of as Plaintiff's credibility. *See Holley v. Colvin*, 975 F. Supp. 2d 467, 480-81 (D.N.J. 2013)(affirming ALJ's findings regarding Plaintiff's ability to sit for an extended period of time because "the ALJ's observations of Plaintiff during the hearing did not serve as the sole basis for his credibility funding, and instead served as an element of his

credibility analysis."). Moreover, it is within the ALJ's discretion to weigh the evidence and his credibility determinations are entitled to great deference. *See Castellano*, 2018 U.S. Dist. LEXIS 158064, at *24-25; *Malcolm v. Comm'r of Soc. Sec.*, No. 16-8646, 2017 U.S. Dist. LEXIS 196512, at *49 (D.N.J. Nov. 30, 2017).  Here, the ALJ's own observations provided further support for the ALJ's conclusion that based on the medical evidence, Plaintiff does not have significantly limiting mental or emotional impairments that prevents her from performing her past relevant work.

Furthermore, despite Plaintiff's arguments to the contrary, the ALJ also clearly considered Plaintiff's medication-induced fatigue. In that regard, the ALJ noted that "despite some episodes in which [Plaintiff] reported experiencing fatigue from the medications, Dr. Abramov still reported that [Plaintiff] was getting 'good' relief from her medication, able to perform daily activities, and was even working 20 hours." (A.R. 27.) Therefore, because the ALJ's determination of Plaintiff's RFC properly considered her mental impairments, Plaintiff's argument is without merit.

### B.    Consideration of Plaintiff's Hand Limitations in the RFC

Plaintiff contends that the ALJ's RFC determination failed to properly consider Plaintiff's limited use of her hands due to her rheumatoid arthritis.  (Pl. Br., at 15.)  She argues that she required frequent breaks while performing her past relevant work, which included using a keyboard, due to stiffness and pain in her hands. (Pl. Br., at 15.) Therefore, Plaintiff contends, she could only perform less than occasional fingering, which would have eliminated her past relevant work and all sedentary work in the national economy. (Pl. Br., at 15.)  In response, Defendant argues that the ALJ considered Plaintiff's limitations and provided the necessary basis for his determination. (Def. Opp. Br., at 14.)

The ALJ notes that Plaintiff complained of rheumatoid arthritis in her hands, elbows, knees, and fingers. (A.R. 27.)  However, "[t]he existence of a medical condition does not alone

demonstrate a disability for purposes of the Social Security Act." *Raglin v. Massanari*, 39 F. App'x 777, 779 (3d Cir. 2002). Further, as with the ALJ's analysis of Plaintiff's mental impairment, the ALJ cites the contradictory medical evidence as being afforded greater weight in his consideration. (A.R. 27.) The ALJ compared Plaintiff's subjective testimony with the objective medical evidence because "[g]reat weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence." *Castellano*, 2018 U.S. Dist. LEXIS 158064, at *23-24. Indeed, Plaintiff cites *Raglin*, which states, "[a]lthough the ALJ may ultimately find the testimony not credible, she must 'give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence.'" *Raglin*, 39 F. App'x at 779. Importantly, as Plaintiff recognizes, the testimony must still be "supported by competent medical evidence[,]" which was not the case here. *Id.*

Plaintiff's treating physicians did not make any recommendations or indicate any specific limitations concerning Plaintiff's hands. In a general medical report dated November 18, 2015, Dr. Casden stated that Plaintiff had push/pull limitations due to Plaintiff being weight restrained. (A.R. 332.) He then reported that Plaintiff had no other limitations that limit Plaintiff's ability to do work related activities. (A.R. 332.) Dr. Casden did not fill in the "wrist" portion of the New Jersey Division of DDS Passive Range of Motion Chart dated November 16, 2015, which included questions about hand and finger range of motion. (A.R. 334.) At the top of the document, it is clearly written that "[s]ections left blank will be considered normal." (A.R. 334.) In another general medical report dated November 18, 2015, Dr. Naini reported that Plaintiff had push and/or pull limitations and other limitations, but did not specify the extent of those limitations. (A.R. 338.) Dr. Naini also indicated that Plaintiff's rheumatoid arthritis and chronic fibromyalgia limited

Plaintiff's ability to do work related activities, but he also did not specify how these conditions would limit Plaintiff. (A.R. 338.)

Furthermore, medical evaluations from September 2016 to December 2017, by Plaintiff's treating physicians at the Rheumatology Center of Princeton, stated that Plaintiff had full range of motion in her wrists, hands, hips, and lumbar spine. (A.R. 27.)  Other evaluations from these physicians from March 2016 to September 2016, showed that Plaintiff had "normal hands, elbows, knees, and fingers." (A.R. 27.)  Moreover, an x-ray of Plaintiff's hand in April 2016 revealed "only mild osseous demineralization, no abnormal soft tissue calcification or misalignment, and normal joint space." (A.R. 27.) Due to the lack of evidence supporting Plaintiff's allegations of hand limitations and the ALJ's reliance on numerous medical evaluation that indicated Plaintiff's hands functioned normally,  the ALJ's decision was "accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.  Therefore, Plaintiff's argument on this point is without merit.

### C.    Consideration of the Medical Opinion Evidence

Plaintiff claims that the ALJ erred in dismissing the opinions of Ms. Hutchinson, Dr. Casden, and Dr. Naini.  (Pl. Br., at 15.)  She further contends that the ALJ provided no reasonable basis for discounting the opinions of the treating sources. (Pl. Br., at 17.)  In response, Defendant argues that the ALJ is entitled to weigh medical opinions in making his determinations and, further, that the ALJ provided sufficient evidentiary basis for his decisions. (Def. Opp. Br., at 15.)

20 C.F.R. § 404.1546(c) specifies that the responsibility for assessing the RFC at the hearing level lies with the ALJ. The regulations provide that "[a]lthough [the Commission] consider[s] opinions from medical sources on issues such as . . . your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is

reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2). In that connection, the Third Circuit has advised that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). In fact, "the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Id*. at 362; *see also Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC.") Accordingly, an ALJ is not bound by the opinion of a physician when determining a claimant's RFC. *Chandler*, 667 F.3d at 361.

### i. *Lindsay Hutchinson, LCSW*

Plaintiff alleges that the ALJ erred in giving the opinion of Ms. Hutchinson little weight. (Pl. Br., at 15.)  Plaintiff contends that the ALJ's only reason for rejecting this opinion was that it was contrary to Plaintiff's psychiatric evaluations and mental status examinations. (Pl. Br., at 16.) Defendant, in response, argues that substantial evidence supports the ALJ's findings and, that because Ms. Hutchinson was a social worker, she was not an "acceptable medical source." (Def. Opp. Br., at 16.)

With respect to opinion evidence, a determinable impairment must be established by "acceptable medical sources," defined to only include licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists. *Marciano v. Berryhill*, No. 18-0945, 2019 U.S. Dist. LEXIS 14412, at *43 (D.N.J. Jan. 30, 2019); *see* 20 C.F.R. § 404.1513. That is, licensed clinical social workers, such as Ms. Hutchinson in this case, are not acceptable medical sources, but are instead classified as "other sources." *Malcolm*, 2017 U.S. Dist. 196512, at *51.  And "[a]lthough an LCSW's opinion is entitled to some weight, it cannot be afforded

20

controlling weight because an LCSW is not an acceptable medical source." *Di Gregorio v. Astrue*, No. 10-3509, 2011 U.S. Dist. LEXIS 89983, at *14-15 (D.N.J. Aug. 12, 2011).  The ALJ must still explain the weight given to opinions from these "other sources." *Malcolm*, 2017 U.S. Dist. 196512, at *51.

The ALJ concluded that Ms. Hutchinson was not considered a medical source under Social Security regulations. (A.R. 29.) The ALJ then used his discretion to assign little weight to her findings. *See Di Gregorio*, 2011 U.S. Dist. LEXIS 89983, at *15. He further provided a substantial evidentiary basis for doing so by citing the contrary medical record and the lack of medical records supporting Ms. Hutchinson's opinion. (A.R. 29.)  The consistency of the record with the opinion is an important factor in determining the weight of the opinion. *See Malcolm*, 2017 U.S. Dist. 196512, at *50-51.  The ALJ cites various medical reports he had previously relied on when making his determination on Plaintiff's mental impairment.  (A.R. 29.) These records from Dr. Abramov, Dr. Naini, and Dr. Gupta indicated Plaintiff was psychiatrically unremarkable. (A.R. 28.) The ALJ summarized these findings, including how Plaintiff could follow multi-step commands and displayed good attention and concentration. (A.R. 28.)

The ALJ properly considered Ms. Hutchinson's opinion and, as he is entitled to do, assigned little weight to it. In doing so, he also provided sufficient evidence to support this decision. Therefore, Plaintiff's argument is without merit.

### ii.    *Drs. Casden and Naini*

Plaintiff claims that the ALJ erred in according little weight to the opinions of Dr. Casden and Dr. Naini, both treating sources.  (Pl. Br., at 16.) Plaintiff further argues that the ALJ provided no reasonable basis for discounting these opinions. (Pl. Br., at 17.)  Defendant responds that their medical opinions were inconsistent with Plaintiff's physical and mental evaluations. (A.R. 17.)

Again, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington*, 174 F. App'x at 11. Regarding the medical opinions, "so long as a treating source's opinion is 'well-supported' and 'not inconsistent with the other substantial evidence,' it is given "controlling weight." *Nixon v. Colvin*, 190 F. Supp. 3d 444, 447 (E.D. Pa. 2016) (quoting 20 C.F.R. § 416.927(c)(2)). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer*, 186 F.3d at (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). The ALJ must also provide the reasons for his decision to discount certain evidence. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429 (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1984)).

Ultimately, the ALJ concluded that the opinions of Dr. Casden and Dr. Naini were "not consistent with [Plaintiff's] physical evaluations showing that the claimant was physically unremarkable." (A.R. 29.) The ALJ recognized the doctors' relationship with Plaintiff as treating physicians, but the contrary medical evidence exists, supporting the ALJ's decision to discount these opinions. First, the opinions of Dr. Casden and Dr. Naini conflicted. Dr Casden opined that Plaintiff could lift and carry up to 15 pounds, while Dr. Naini stated she could lift only 5 pounds. (A.R. 29.) Dr. Casden opined that Plaintiff was limited in sitting, standing, and walking by her tolerance. (A.R. 332.) Dr Naini stated Plaintiff was limited to sitting for less than 6 hours per day and limited in standing and walking for less than two hours per day. (A.R. 338.)

22

Second, the medical opinions of the DDS medical consultant, Fran Friedman Ph.D., and Ibrahim Housriu, M.D. provided a basis for the ALJ's ultimate finding.  (A.R. 28.)  The ALJ accepted their recommendations, which did not differ greatly from Drs. Casden and Naini's opinions, that Plaintiff could occasionally carry or lift 20 pounds, frequently lift or carry 10 pounds, stand or walk for a total of 4 hours, and sit for a total of 6 hours in an 8-hour workday. (A.R. 74.) The ALJ took into account the fact that these opinions were "based on the doctor's respective specialty in examining [Plaintiff's] functioning and their familiar[ity] with the Agency's definitions of work, program goals, and regulations." (A.R. 28.) The ALJ reasoned that the DDS medical consultant's opinion carried greater weight than the treating source by reasoning that the DDS medical consultant is more familiar with the standards by which the ALJ must make his determinations.

And finally, the medical record, as the ALJ concluded, contains multiple physical evaluations which found that Plaintiff was physically unremarkable.  While Dr. Abramov's records show ongoing treatment for chronic pain, the record also showed that Plaintiff responded well to treatment and was able to perform daily activities. (A.R. 27.)  Reports from September 2016 to December 2017 stated that Plaintiff had full range of motion in the wrists, hands, hips, and lumbar spine. (A.R. 27.) These evaluations, that described a stable condition, contradict certain opinions of Drs. Casden and Naini, which opinions claimed that Plaintiff was extremely limited in her ability to undertake daily activities or even sedentary work.  The ALJ is entitled to weigh the medical opinions and other records and make a determination that is based on substantial evidence. *Chandler*, 667 F.3d at 361. The contradicting evidence and accordance of greater weight to the DDS medical consultant provides the substantial evidence to support the ALJ's conclusion. Therefore, Plaintiff's argument is without merit.

### D.      The ALJ's Evaluation of Father's Witness Statement

Plaintiff argues that the ALJ erred in rejecting the statement provided by Plaintiff's father concerning his observations of Plaintiff's mental and physical limitations. (Pl. Br., at 18.)  She also argues that the ALJ failed to point to any objective evidence on the record that contradicts Plaintiff's father and that the ALJ failed to provide the actual evidence used to evaluate the credibility of his testimony. (Pl. Br., at 18.) Defendants contend that the ALJ properly weighed the evidence in evaluating Plaintiff's father's statement and, further, that the ALJ provided sufficient basis for discounting the statement. (Def. Opp. Br., at 19.)

The ALJ stated that he assigned little weight to this statement because Plaintiff's father was a partial party whose opinion mirrored the statements contained in Plaintiff's own testimony, his opinion was not consistent with the totality of the medical record, and he was not recognized as a medical source under the relevant regulations. (A.R. 29.)   "The fact that a witness is a family member cannot be, without more, a reason for discounting that person's testimony." *Richards v. Colvin*, 223 F. Supp. 3d 296, 306 (M.D. Pa. 2016) (citing *Markoch v. Colvin*, No. 14-00780, 2015 U.S. Dist. LEXIS 64382, at *36–37 n.2 (M.D. Pa. May 18, 2015)). However, "[c]ourts in this Circuit have repeatedly found that an ALJ's failure to weigh lay statements, although technically a violation of applicable legal standards, did not require remand because the statements would not have changed the outcome of the case — especially where the testimony was cumulative." *Roveccio v. Berryhill*, No. 17-03897, 2019 U.S. Dist. LEXIS 42682, at *34 (D.N.J. March 14, 2019); *see Lopez v. Comm'r Soc. Sec.*, No. 15-3759, 2016 U.S. Dist. LEXIS 179023, at *38-39 (D.N.J. Dec. 27, 2016); *Buffington v. Comm'r of Soc. Sec. Admin.*, No. 12-100 JBS, 2013 U.S. Dist. LEXIS 29860, at *27 (D.N.J. March 4, 2013)("Because [claimant's father's] testimony is largely cumulative of Plaintiff's own testimony, which the ALJ expressly found not credible,

[claimant's father's] opinions do not have a significant effect of the outcome of the case."); *Butterfield v. Astrue*, No. 06-0603, 2011 U.S. Dist. LEXIS 48586, at *22-23 (E.D. Pa. May 5, 2011). The Third Circuit has applied a harmless error rule in ruling on Social Security appeals. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("We . . . conclude that a remand is not required here because it would not affect the outcome of the case.")

The ALJ found that Plaintiff's subjective testimony was not credible, as it was contradicted by the medical record. (A.R. 26.) Moreover, the father's statement is cumulative because it largely repeats Plaintiff's self-serving testimony. Plaintiff's father states that Plaintiff's back problems caused her to miss work, she had two surgeries to relieve her pain, she has been treated for chronic pain, sitting or standing for a prolonged period caused her pain and Plaintiff was frustrated by her current situation. (A.R. 272.) The ALJ did not fully disregard his statement, but merely assigned little weight to it. However, the ALJ did not fully explain how the medical record contradicted Plaintiff's father's statements. Although he fails to sufficiently address this one statement, the ALJ cites substantial evidence in his analysis of Plaintiff's mental and physical impairments to support his determination. To the extent that the ALJ may have erred in discounting Plaintiff's father's opinion, the failure "to elaborate upon a finding of its opinion is at most harmless error because the record overwhelmingly supports the Secretary's determination." *Matullo v. Bowen*, 926 F.2d 240, 247 (3d Cir. 1990). Therefore, remand is not necessary here because further consideration of Plaintiff's father's testimony would not have changed the outcome of the ALJ's decision.

### E.    Medical Vocational Guidelines

Plaintiff contends that she has met the requirements to be declared disabled under the Medical Vocational Guidelines. (Pl. Br., at 12-13.) These guidelines are used in cases "where an individual with a severe medically determinable physical or mental impairment(s) is not engaging

in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work." 20 C.F.R. pt. 404, subpt. P, Appendix II (2020).  As the ALJ determined that Plaintiff was able to perform her vocationally relevant past work, no analysis using of the Medical Vocational Guidelines was necessary.  Therefore, Plaintiff's argument is without merit.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Court finds that the ALJ's decision was supported by substantial evidence in the record. Accordingly, the ALJ's decision is **AFFIRMED**.


DATED:  August 12, 2020                                    <u>/s/ Freda L. Wolfson</u>
                                                           Hon. Freda L. Wolfson
                                                           U.S. Chief District Judge